**MAYFLOWER INVESTMENT COM-
PANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

No. 15953.

United States Court of Appeals
Fifth Circuit.

Dec. 26, 1956.

Sam G. Winstead, Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., for petitioner.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, John Potts Barnes, Chief Counsel, John M. Morawski, Sp. Atty., I. R. S., Hilbert P. Zarky, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This petition for review from a decision of the Tax Court presents two questions: (1) Whether the court properly found that the sum of $12,300 received by petitioner in 1950 was interest instead of operating profit; and (2) Whether the failure of petitioner to file a personal holding company return for the years 1947 through 1950 was properly held by the Tax Court not to be due to reasonable cause and due to willful neglect and therefore warranted the imposition of the negligence penalty for failure to file under Section 291 of the Internal Revenue Code of 1939.[1]

---

1. "§ 291. Failure to file return
"(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or pre-
scribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added

The question whether the sum of $12,300 received by petitioner in 1950 was interest depends upon the construction placed on a transaction entered into between taxpayer and Southern Homes, Inc. Mayflower obtained a loan from its bank for Southern Homes in the sum of $150,000 and received in return Southern's promissory note due in 6 months for $162,300, plus 4% interest. The testimony is that the president of Southern Homes made the deal to provide the sum of $12,300 to Mayflower because he felt morally obligated to Collins, the president of Mayflower, for a loss he had sustained on a deal some 20 years earlier. He testified, and Collins concurred, that the figure was arrived at by computing that with the $150,000 loan Southern would be able to build 30 homes and Mayflower would receive $450 per house built. Neither the old outlawed indebtedness nor the exact terms of the deal were discussed between the two men when the note was executed, nor was anything said as to whether the $12,300 would be paid if the profits failed to materialize. When the $12,300 was received by Mayflower it was entered on its books as interest and was reported as interest on its income tax returns. This was explained by counsel, who argued that under the taxpayer's theory that it was not a holding company it was immaterial whether the sum was interest or operating profit.

The Tax Court found the payment of $12,300 was a payment of interest. We think such finding is clearly supported by the evidence in the record. Interest is defined in Internal Revenue Regulations as "any amount, includible in gross income, received for the use of money loaned  *  *  *."[2]

The Supreme Court has defined it in tax litigation as "compensation for the use or forbearance of money." Deputy v. DuPont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416, and see Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484.

Accepting the testimony of the witnesses at full value does not prevent the conclusion reached by the Tax Court that this payment was interest. All that is shown by the testimony is that Southern Homes and its president wanted to make it possible for taxpayer to recoup the earlier loss of its predecessor. There is nothing to indicate that this recoupment was intended to be in the nature of an operating profit rather than interest. The parties cast it in the form of interest in that it was in the form of a promissory note to pay $162,300 in return for $150,000, and the taxpayer itself so denominated it on its books.

We are certainly not able to hold that the Tax Court's characterization of it is clearly erroneous.

The decision of the Tax Court that the negligence penalty was properly asserted by the Commissioner presents more difficulty. Mayflower was originally organized by Collins, its president, to hold and finally liquidate some properties that were the final holdings of a dissolved insurance company. For most of its life until the years here in question it had enjoyed no taxable income. Its returns were prepared by its secretary-treasurer, Waller, who was its bookkeeper during its entire existence. On the trial below Waller testified that at all times in issue he was familiar with the basic facts that would determine each year whether the taxpayer was a personal holding company. He admitted that it was at all times such a company but stated that he had been under a misconception as to what constitutes a personal holding company. In fact while testifying in the Tax Court he stated two ma-

to the tax: 5 per centum if the failure is not for more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate  *  *  *." 26 U.S.C.A. § 291, I.R.C. 1939, as amended.

**2.** Reg. 111 § 29.502–2, 1939 Code.

terially different understandings, which he said he had held, one of which correctly states the law. He first stated:

> "I have read and studied the code in night school and my understanding of a personal holding company would be that it must be expressed [sic] in five people and that the stock must be vested in five people and in view of the circumstances and facts there, my answer to that question would be no, because there were some 77 to 80 stockholders."

Later he testified:

> "It was my interpretation that 50% or more (of the stock) had to be vested in five people before it would be considered a personal holding company."

In point of fact this is practically the definition of the statute, which is "more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals." 26 U.S.C.A. § 501(a) (2), I.R.C.1939.

On each return here in question there was an item requiring an answer to the question: "Is the corporation a personal holding company within the meaning of section 501 of the Internal Revenue Code?—(if so, an additional return on Form 1120 No. H must be filed.)" Waller testified that each year he answered "No" to this question. He was asked:

> "Did you ever take the time to look up section 501 of the Internal Revenue Code before you gave the answer to that question?"

Mr. Waller's answer was:

> "I do not remember any specific case where I looked it up and I don't recall doing so."

Certainly it seems to us, such conduct by the officer of this corporation who had all the information as to stock ownership and who had for years assumed the responsibility of making a corporation's returns would justify the Tax Court's finding that the failure to file the personal holding company return was not due to reasonable cause but was rather due to willful neglect.

But, says petitioner, the effect of Waller's error was changed by the introduction of Mr. Sharp in 1947. Sharp was a son-in-law of Collins, taxpayer's president. He had been admitted to the bar in 1940, had practiced briefly and had served in the Navy as a legal officer, and had subsequently taken courses at the Harvard Business School. He was employed by Collins's insurance company and at Collins's request was available to Waller for consultation as to Mayflower's tax problems.

Sharp testified that he was familiar with the facts relating to the stock ownership and sources of income of Mayflower and that he saw some of the returns for the years 1947–1950. He testified further that he was not asked by Waller specifically about the corporation's status as a personal holding company. On cross-examination he was asked:

> "You never did check (the returns) to see and determine whether or not the Mayflower Investment Company was a personal holding company or not?"

He answered: "No, sir." He further stated that he recalled "seeing" some of the returns, but did not recall for which years. Mr. Waller testified as follows on cross-examination:

> "Q. Do you recall now whether or not at any time during any of these years the income tax returns for the Mayflower Investment Company were discussed with Mr. Sharp? A. No, sir, the only time I recall having discussed with him especially was the one having to do with the amount of interest." [3]

---

3. This is the item of interest heretofore discussed, and as a result of this discussion the item was reported as interest in the 1950 return.

We have recently held in Miller v. Commissioner of Internal Revenue, 5 Cir., 237 F.2d 830, that if a taxpayer acted in accordance with the instructions of a certified public accountant, where he was not put on notice of any facts to cause him to doubt his skill, his incorrect actions in the method of signing could not support a finding by the Tax Court that his error was due to willful neglect.

■ We have no hesitancy in applying the same rule to a practicing lawyer on whom a taxpayer has reason to rely. It cannot be a requirement, as is suggested by the respondent here, that a lawyer or accountant must be shown in fact to be a "tax expert" before reliance on his advice is reasonable. We have held that reasonable cause as used in this section of the Code "means nothing more than the exercise of ordinary business care and prudence." Southeastern Finance Co. v. Commissioner of Internal Revenue, 5 Cir., 153 F.2d 205. For a full discussion of cases in which the Tax Court or appellate courts have found that good faith reliance on a lawyer or an accountant satisfied the test of reasonable cause and absence of willful neglect, see Ragsdale v. Paschal, D.C., 118 F. Supp. 280.[4]

The difficulty for the petitioner here is that there has not been any "reliance" upon either an accountant or a lawyer in the sense in which that term is used in the cases. The reliance upon Waller is of no avail here because he acted not as a professional adviser but for the corporation itself, since he was the responsible officer. He either had to know the requirements of the law or place the responsibility on others reasonably believed to be qualified to assume it. Here he did neither. No responsibility for determining whether this was a correct return was ever placed on the lawyer. He went over specific matters at Waller's request, although the testimony that he actually reviewed even these limited matters is scant indeed. The question of liability for filing a personal holding company return was not presented to him because Waller had already decided that matter himself. It is not even shown that Sharp knew that Waller had decided the issue wrongly or even that he knew that such an inquiry was made on the face of the return. This is quite a different case from Haywood Lumber & Mining Co. v. Commissioner, 2 Cir., 178 F.2d 769, and similar cases in which the record discloses that full responsibility was placed upon the tax adviser.

■ We think it clear from the record before us that there was ample basis for the Tax Court's finding that the action of Waller in willfully answering "No" year after year to the specific question which called to his attention the pertinent section of the code without his taking the time or trouble to look up the indicated section, amounted to willful neglect. Such neglect was not erased by the casual reference of other items affecting the income of taxpayer to the volunteer lawyer who assumed no responsibility to inquire into more than was presented to him by Waller.

There being no error in the decision of the Tax Court, it is

Affirmed.

4. The court, at 118 F.Supp. 287, quoted from In re Fisk's Estate, 6 Cir., 203 F.2d 358, 359:

  "'* * * Various courts have held as a matter of law that reliance upon an attorney or an accountant for making out and filing of tax returns constitutes reasonable care. Dayton Bronze Bearing Co. v. Gilligan, 6 Cir., 281 F. 709; Haywood Lumber & Mining Co. v. Commissioner [2 Cir., 178 F.2d 769]; Orient Investment & Finance Co. Inc. v. Commissioner [83 U.S.App.D.C. 74, 166 F. 2d 601, 3 A.L.R.2d 612]. The tax court has repeatedly decided that reliance upon counsel constitutes reasonable cause for failure to timely file necessary tax returns. The C. R. Lindback Foundation Inv. v. Commissioner, 4 T.C. 652; Brooklyn & Richmond Ferry Co., Inc., v. Commissioner, 9 T.C. 865; Safety Tube Corporation v. Commissioner, 8 T.C. 757; Diana McFadden Houk, 6 T.C.Memo. 649.'"