Merian **ROHRABAUGH**, Administratrix of the Estate of John T. Lemen, Sr., Deceased, Plaintiff-Appellee,

v.

**UNITED STATES of America**, Defendant-Appellant.

No. 79–1317.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1979.

Decided Dec. 18, 1979.

---

**6.** No State shall . . . pass any . . . ex post facto Law . . . . U.S.Const., Art. I, § 10, cl. 1.

**212**

Gary R. Allen, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Lester N. Bergum, Jr., Frankfort, Ind., for plaintiff-appellee.

PELL, Circuit Judge.

This is an appeal by the defendant Government from a summary judgment granted the plaintiff taxpayer in which the defendant was directed to refund the plaintiff the amount of the penalty assessed against her for a late filing of a federal estate tax return. The facts are not in dispute and are as follows.

John T. Lemen died on March 25, 1976. On March 29, 1976, his widowed daughter, Merian C. Rohrabaugh, qualified as administratrix of the estate and employed James T. Robison, an attorney, to handle the administration. Taxpayer is a high school graduate but has had no college or other advanced education. She was employed as a receptionist/telephone operator at the local hospital and was inexperienced in business matters. Robison had been practicing in the area of probate law since 1947. His firm had prepared tax returns for the taxpayer's father for many years and taxpayer was familiar with the good reputation of the firm in the area of estates and taxation.

Taxpayer had no previous experience as a personal representative of an estate and relied completely on her attorney to prepare for her signature and properly file all necessary papers, including the return in question. Taxpayer made full disclosure of all relevant facts and papers to her attorney and frequently discussed with him the progress and status of the probate proceedings. Assurances were consistently received from her attorney as to the progress and propriety of all estate matters; however, taxpayer was never informed nor made aware that an estate tax return was due on December 27, 1976, nine months after Lemen's death.

On March 24, 1977, when the taxpayer's attorney was preparing for filing the Indiana State Inheritance Tax Schedule,[1] he

---

1. The Indiana return was required to be filed within twelve months from the date of death.

IC 1971 6–4.1–4–1 (Burns Code Ed.) For many years prior to 1971, the federal estate tax re-

realized for the first time that the federal estate tax return had not yet been filed and was overdue. Taxpayer was informed at that time of the error, and the attorney freely admitted that the failure timely to file the estate tax return was an oversight on his part.

The administration of this estate apparently encountered difficulties from the outset. A principal source was a strained relationship between some of the estate heirs which was not reduced by the problem arising from the fact that the principal asset of the estate was 162 acres of farm land with liabilities substantially in excess of the small amount of liquid assets. The heirs attempted unsuccessfully to divide the real estate in kind and to borrow on mortgages in a sufficient amount to pay the estate expenses. Several months before the due date of the federal estate tax return, Robison made a special trip to Indianapolis to secure the appropriate tax form to pay the estate tax over a period of years so the farm would not have to be sold. Division in kind and mortgages did not work out and other solutions to the problem were considered but also failed to find agreement. In December 1976, a decision was reached to sell the farm land. In the Inventory and Appraisement of the estate filed in the state probate court on December 7, 1976, the appraised value of real property was $261,020. All other assets totalled approximately $8,000. At about this same time the Robison firm became heavily involved in the preparation of farm income tax returns. In county seats in farming areas this time is the busiest of the year for general practitioners who must add the income tax load to their regular practice.

The farm land was sold in March 1977 for $322,000. At about this time the failure to file the federal estate tax return was discovered. The return thereupon was promptly prepared and filed on March 28, 1977. The tax was paid at the same time with the money therefor having been bor-

rowed pending the final closing of the real estate transaction. If the estate tax return had been timely filed, the value of the real estate would have been understated by more than $61,000 necessitating a later amended return which presumably would not have resulted in any penalty. Neither the taxpayer nor Robison received any notice from the Internal Revenue Service that the return was overdue.

The return was filed three months and one day after its due date. Inasmuch as the one day constituted a fractional part of another month, a penalty for late filing based upon four months was assessed in the total amount of $10,764.87. This amount was paid plus interest and a claim for refund was filed. By letter of March 30, 1978, taxpayer was notified that the claim was disallowed because she had "failed to establish reasonable cause for the late filing." Suit was filed in the district court which entered summary judgment in favor of the plaintiff. This appeal followed.

The decision to deny the taxpayer's claim was "based on the provisions of the Internal Revenue law and regulations." The pertinent section of the statute, 26 U.S.C. § 6651, reads as follows:

(a) Addition to the tax.—In case of failure—(1) to file any return . . . on the date prescribed therefor . . ., unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of the tax if the failure is not for more than 1 month, with an additional 5 percent for each month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . .

The pertinent section of the regulations, 26 C.F.R. 301.6651–1(c), reads as follows:

If the district director, . . . determines that the delinquency was due to a reasonable cause and not to willful ne-

turn did not have to be filed to be timely until fifteen months after the death or three months after the due date on the Indiana Inheritance

Tax Schedule. 26 U.S.C. § 6075. Beginning in 1971, the filing time on the federal return was shortened to nine months. *Id.*

glect, the addition to the tax will not be assessed. If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause.

If we were considering this case on an *a priori* basis solely on the basis of the foregoing, we would have slight difficulty in affirming the district court. Here an inexperienced taxpayer wholly unaware of the time requirements for filing a federal estate tax return selected a competent tax expert, supplied him with all the necessary and relevant information, requested him to prepare all necessary documents including tax returns, relied upon his doing so, but nevertheless maintained contact with him from time to time during the administration of the estate. This would seem on any reasonable standard to be exercising ordinary business care and prudence under the circumstances here involved. We address ourselves only to the matter of "reasonable cause" as we can see no basis for a claim that there was "willful neglect," nor does it appear that the Government is really claiming there is such basis.

Further, on the matter of reasonable cause, we think the type of tax would have a bearing on the matter of ordinary business care and prudence. Section 6651 covers other types of taxes. The situation might be entirely different if filing an income tax return were involved. A taxpayer might have considerable difficulty in demonstrating an unawareness of the due date on an annual income tax return, if, for no other reason, because of the repeated media references to the deadline date. Indeed, reference often appears to the fact that a line will be forming at post offices as midnight of the final day approaches. The tax with which we are concerned, however, has a floating due date keyed to the timing of the death of a particular decedent. Everyone, except fiscal year taxpayers, has the same income tax deadline.

Our ease in reaching a decision would not be diminished by consulting earlier case law. Thus, in *Haywood Lumber & Mining*

*Co. v. Commissioner*, 178 F.2d 769, 771 (2d Cir. 1950), a distinguished panel of the Second Circuit, overruling the Tax Court, held that when a taxpayer had selected a competent tax expert, supplied him with all necessary information and requested him to prepare proper tax returns, the taxpayer had done all that ordinary business care and prudence could reasonably demand. The court also disagreed with the Tax Court's characterization of the taxpayer as merely waiting passively because he had affirmatively requested the preparation by the consultant of proper returns. To have required him to inquire specifically would have nullified the very purpose of consulting an expert. The court also repudiated the rationale of one of its own earlier cases, *Berlin v. Commissioner*, 59 F.2d 996 (2d Cir. 1932), *cert. denied*, 287 U.S. 642, 53 S.Ct. 90, 77 L.Ed. 555, to the effect that where all responsibility for the preparation of tax returns is delegated to an agent, the taxpayer should be held to accept its agent's efforts *cum onere* and be chargeable with his negligence.

A few years later the Sixth Circuit expressly adhered to the rule stated in *Haywood*, although broadening it somewhat, in *In re Fisk's Estate*, 203 F.2d 358, 360 (6th Cir. 1953):

This rule, we hold, applies to the filing of tax returns as well as to reliance upon technical advice in complicated legal matters. We think this conclusion is in accord with the principle declared by the Supreme Court that the penalties under the revenue laws were designed to be imposed upon conduct "which is intentional, or knowing, or voluntary, as distinguished from accidental." *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381. "It is not the purpose of the law to penalize * * innocent errors made despite the exercise of reasonable care." *Spies v. United States*, 317 U.S. 492, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418.

*See also, Commissioner v. American Association of Engineers Employment, Inc.,* 204 F.2d 19 (7th Cir. 1953).

We are unable to stop at this point, however, notwithstanding the obvious equities in the case, consideration of which seems to have no special obeisance in the area of revenue collecting. A review of later authorities demonstrates that either the collector or the taxpayer can advance a claim of case law support even though most of the cases will be found upon close examination to be factually distinguishable. We also note references to affirmances of penalty decisions of the Tax Court being put on the basis of the decision under review not being clearly erroneous. Although it would seem that, as in most cases, there are preliminary questions of fact to be determined by the trial court, for example, whether reasonable cause exists in a specific case, what elements are required to be present to constitute reasonable cause would be a question of law. *In re Fisk's Estate, supra* at 359; *Hatfried, Inc. v. Commissioner,* 162 F.2d 628, 635 (3d Cir. 1942); *Haywood Lumber and Mining Co., supra* at 772. In any event, to the extent that the "clearly erroneous" standard is applicable in the present case, we are reviewing a decision in favor of the taxpayer. Ultimately from our review of the authorities, to which we now turn, we come to the conclusion that the murkiness of the guidelines leaves the decision of the propriety of the penalty substantially on a case-by-case basis.

Initially, we will look at two cases: *Giesen v. United States,* 369 F.Supp. 33 (W.D. Wis.1973), relied upon by the taxpayer and the district court in this case, and *United States v. Kroll,* 547 F.2d 393 (7th Cir. 1977), which is the basis of the Government's remonstrations.

In *Giesen,* the taxpayer was appointed executor of his mother's estate. He was a physician with no knowledge of business practices and had all his own business records and tax returns prepared by independent accountants. Within a few days after his mother's death, the taxpayer employed an apparently competent attorney who had previously probated the taxpayer's father's estate in a "prompt, efficient, and expert manner." 369 F.Supp. at 34. The attorney took custody of all relevant papers, records,

documents, etc. Taxpayer repeatedly inquired of the attorney as to the progress of the estate proceedings and was consistently informed that the estate was being properly handled. This was not a correct characterization apparently, because the return was not filed until almost four years had passed from the taxpayer's mother's death. The Service, therefore, assessed the appropriate penalty, which presumably was only five percent more of the tax than was assessed in the present case.

The question before the district court was whether the taxpayer's reliance upon his counsel to file timely the estate tax return was "reasonable cause" so as to excuse the delayed filing. The Government contended that as the executor's duty to file a timely return was a personal nondelegable duty of the taxpayer, a failure to file timely the return could not be excused by the taxpayer's reliance upon his counsel. The district court held otherwise, however, and set forth the standard relied upon by the taxpayer in the present case. The court stated that reliance upon counsel shall be "reasonable cause" for delayed filing where: (1) the taxpayer is unfamiliar with the tax law; (2) the taxpayer makes full disclosure of all relevant facts to the attorney or accountant he or she relies upon; and (3) the taxpayer has exercised ordinary business care and prudence. The court held that the taxpayer had met this test, stating: "Selecting a competent tax expert, supplying him with the necessary information, and asking him to prepare proper returns are all 'ordinary business care and prudence' can reasonably demand." 369 F.Supp. at 36, *citing Haywood Lumber and Mining Co., supra* at 771.

In *Kroll,* a somewhat different fact situation was before the court. In that case, the taxpayer was a college graduate with one year of law school. He had experience with both a large industrial company and a brokerage firm and had prepared and filed his own income tax returns for many years. Nevertheless, when the taxpayer became the executor of his mother-in-law's estate, he entrusted the preparation and filing of the estate tax return to an attorney. The

return was filed one year late and more than nine months after the taxpayer had received notice from the IRS regarding the delinquency.

The district court in *Kroll* had found in "a conclusory way" that the taxpayer was entitled to rely upon his attorney properly to file the return. This court reversed, however, concluding that such a determination was not supported by the facts. The court noted that whereas the taxpayer may have been reasonable in relying upon the attorney for answers to problems involving the intricacies of the tax laws, reliance upon the attorney for timely filing of the return was not reasonable where the taxpayer had specific knowledge of when the return was due, had been notified by the Service of the tardiness, and even then had done nothing to make sure that the return was timely filed. In finding that the penalty was warranted, this court stated:

> The sole issue is Kroll's knowledge of the filing date and his failure to file on time.

547 F.2d at 395.

> Despite the uncontradicted proof of Kroll's awareness of the facts, the District Court concluded that Kroll was entitled to rely on [the attorney] and he did so in good faith. With this conclusion we must disagree as completely unsupported by the facts  .   .   . .

> \*    \*    \*    \*    \*    \*

> Any layman with the barest modicum of business experience knows that there is a deadline for the filing of returns and knows that he must sign the return before it is filed. If, in addition, the taxpayer in a given case knows the exact date of the deadline, then the failure of his attorney or accountant to present him with the return for his signature before that date must put him on notice that reliance on the attorney or accountant is not an exercise of ordinary business care and prudence.

*Id.* at 396.

A quick review of the above quoted language reveals that the *Kroll* case is clearly distinguishable from the present situation. As stated above, the taxpayer here had no business experience that would reveal to her that there is a deadline for the filing of estate tax returns. More importantly, however, the taxpayer in this case had no knowledge of exactly when the return was due. In this situation, we refuse to accept the Government's invitation to read *Kroll* as implicitly establishing a *per se* rule that reliance upon counsel for the timely filing of federal estate tax returns can never constitute "reasonable cause." In addition, we cannot say that the district court's conclusion that "reasonable cause" was shown in the present case is clearly erroneous.

The Government puts great weight in the fact that in *Kroll* this court stated in a footnote that to the extent *Giesen* was contrary to the holding in *Kroll*, it was, in this court's opinion, incorrect. We make no departure from that statement here, but find, rather, that *Giesen* is simply, to the extent relevant in this case, a different factual situation than *Kroll*. In any event, the scope of the disapproval is offset by the preceding footnote in *Kroll* which expressly stated that the court was not deciding whether Kroll's reliance was justified prior to his receiving the notice and thereupon acquiring knowledge of the delinquency. 547 F.2d at 396, n.2. Ten months passed after Kroll acquired knowledge of the due date before the return was filed. In the present case, the return was filed within four days after the taxpayer became aware it had not been filed. We would have no difficulty in reaching the *Kroll* result if facts similar to *Kroll* were involved in the present case.

Like the case before us today, *Giesen* involved an inexperienced taxpayer with no knowledge of business affairs or of the due date of the return. As in this case, within a few days after the decedent's death, the taxpayer employed an apparently competent attorney to prepare and file the estate return. The taxpayer gave the attorney all the necessary information, kept constantly in touch with the attorney concerning the progress of the proceedings and received no notice of the delinquency. These are far different circumstances than existed in *Kroll*.

We regard the footnote reference in *Kroll* to *Giesen* as simply stating that to the extent that *Giesen* was subject to an interpretation that reliance upon counsel for timely filing would *always* constitute reasonable cause, this court did not agree. We likewise reject a reading of *Kroll* as presenting a *per se* rule that such reliance is *never* sufficient to constitute reasonable cause. In sum, we do not regard the footnote reference as being inconsistent with the result we reach in the present case.

As stated above, most of the cases relied upon by the parties are distinguishable from the present case. Some of these cases make the differentiation between reliance upon technical advice such as the legal duty to file a return at all on the one hand, and reliance on the attorney or accountant preparing and filing the return on the other hand. We do have some difficulty in not allowing the inexperienced person to rely when he has no knowledge of when a return might be due and has told the attorney to prepare and file the return and the attorney has undertaken this task, hardly nontechnical in the case of a federal estate tax return, while saying he can rely when he is given some technical advice on some matter of tax law.

Other cases are of little help which involve situations where the taxpayer purported to rely when he had actual or constructive knowledge of the date on which the return was due. We also would question whether reasonable cause would encompass a situation of substantial abandonment of care on the part of the taxpayer by simply retaining the lawyer and telling him in effect, "Call me, if you need me. It's all in your hands." Here, of course, the taxpayer and the lawyer discussed various aspects of the estate administration including the necessity of paying the estate tax, and she consistently was in touch with him during the course of the administration.

Of course, cases where the taxpayer's delinquency was shown to be intentional, or where there was an inadequate showing of reliance or of the advice received, or where there was simply no discussion of the relevant considerations by the court are of little assistance to either party. *E. g., Rubber Research, Inc. v. Commissioner*, 422 F.2d 1402 (8th Cir. 1970); *Consolidated-Hammer Dry Plate and Film Co. v. Commissioner*, 317 F.2d 829 (7th Cir. 1963); *Mayflower Investment Co. v. Commissioner*, 239 F.2d 624 (5th Cir. 1956); *Davis v. Commissioner*, 184 F.2d 86 (10th Cir. 1950); *Ruel v. United States*, 430 F.Supp. 1122 (E.D.Wis.1977).

We do note a case more closely related to our factual situation here, *Gray v. United States*, 453 F.Supp. 1356 (W.D.Mo.1978). There, the attorney mistakenly thought he had 15 months to file the return instead of the nine months actually allowed. The taxpayer, though she had previously been an executrix of another estate (which required no return), relied upon her attorney to prepare and file the return, gave him the necessary documentation, and frequently communicated with him regarding the status of the estate. The court, citing *Kroll*, noted the distinction between relying upon counsel for substantive legal advice and relying upon the attorney simply for getting the return timely filed, yet held that the relevant question in that case was whether the taxpayer knew, or reasonably should have known when the return was due. The court distinguished *Kroll* on its facts, and held that the taxpayer's reliance, in light of her ignorance of the due date, was reasonable. *See also In re Fisk's Estate, supra*, and *Clum v. United States*, 424 F.Supp. 2 (S.D. Ohio 1976) and *see Haywood Lumber and Mining Co., supra*, and *Dexter v. United States*, 306 F.Supp. 415, 428 (N.D.Miss. 1969). *Ferrando v. United States*, 245 F.2d 582 (9th Cir. 1957) and *Estate of Campbell v. United States*, 449 F.Supp. 675 (D.N.J. 1977), involving more sophisticated taxpayers, are not inconsistent with this opinion.

The Government lastly relies upon a recent Fifth Circuit case, *Millette and Associates, Inc. v. Commissioner*, 594 F.2d 121 (5th Cir. 1979). *Millette* involved a corporate taxpayer maintaining it had filed a 1972 income tax return when, in 1974, an audit and full search of the Service's record center could find no such return. The tax

court held that as the taxpayer's contention could not be corroborated (the corporate president could not remember signing or filing the 1972 income tax return) it would not allow the consolidation of the 1972 return with another return, and assessed a late filing fee with regard to the 1972 return. The corporate taxpayer objected to the penalty, contending that its president did not know the due date of the 1972 return and had relied upon the corporation's accountants for timely filing the return. The Fifth Circuit upheld the tax court's determination, however, and held that the reliance upon the accountants was not the exercise of reasonable business care and prudence in that case.

We do not think much discussion is necessary to distinguish *Millette* from the present case. Quite simply, we believe it is more reasonable for a hospital receptionist with no business experience to rely on her lawyer properly and timely filing an estate tax return when she did not know when that return was due, or even that it had a due date, than it is for a corporate taxpayer to rely upon its accountants to file timely the income tax return because the president did not know when the 1972 income tax return was due.[2]

In this period of public concern about the increasing burden of taxation, not a new concern in the history of this country, we think it appropriate to reexamine on an objective basis the particular part of the tax law involved in the present case. The amount to be paid under section 6651, when it has been "determined," pursuant to the regulation, that it is owing, is described in the statute as an addition to the tax. This is a euphemism, pure and simple. It is a penalty and the next subsection of section 6651 is so captioned. A penalty of five percent for one full month is the equivalent of interest computed at sixty percent per

annum; and when five percent is charged for one day the annual percentage equivalency becomes astronomical. Such a penalty should not be automatically imposed and it is of little comfort to the delinquent return filer that the penalty tops out at twenty-five percent of the tax. Congress presumably could have mandated a penalty in the amounts stated in the statute to be due and payable without regard to the circumstances causing the delinquency. Congress, however, did not do so.

While the penalty is a heavy one, it has been held that it is not primarily punitive in nature. *Plunkett v. Commissioner*, 118 F.2d 644, 650 (1st Cir. 1941). The Supreme Court, a few years earlier had addressed this matter in *Helvering v. Mitchell*, 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938), as follows:

> The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. (Footnote citations omitted).

The rationale is clearly inapplicable to the present case. The record does not even indicate that the Service was aware that there would be a tax owing in this estate. While it is true, insofar as protecting the revenue was concerned, that the revenue came in after it was due, but it was accompanied by interest for the period of delinquency. Of course, there was no fraud here, nor any aspect of interference with the ongoing work of the Internal Revenue Service. We do not intend to minimize the importance of both prompt filing and prompt payment under our quasi-voluntary system of tax collection. On the other

---

2. The Service itself recognizes that different considerations may be relevant when reviewing different types of returns. The treasury regulations provide:

> In determining if the taxpayer exercised ordinary business care and prudence in providing for the payment of his tax liability, considera-

tion will be given to the nature of the tax which the taxpayer failed to pay. 26 C.F.R. § 301.6651–1(c)(2).

We have previously adverted to that difference between an income tax and a federal estate return insofar as presumed knowledge is concerned.

hand, the penalty sword should not be wielded without adequate regard to the circumstances of the case. We think it was done so here.

Finally, we express no concern at the possibility that the result we reach in this case might be subject to the charge that it will encourage belated filing of tax returns, or what is variously categorized, albeit tritely, as opening "Pandora's box" or "the floodgates." We think a number of factors will militate against this possibility being a reality. In the first place, this opinion will be of no help to a taxpayer whose delinquency is intentional, or who shows an inadequate reliance. We regard this opinion as narrowly drawn and as giving no encouragement to the belated filer beyond the opinion's perimeters. Other cases will have to be decided upon their own facts and in any case the heavy burden of proving reasonable cause is on the taxpayer. Also, we are not unmindful that the attorney or the accountant is in the embarrassing position in a situation such as the present one where he has to admit that he failed to perform in a manner in which he was expected to do by his client. As the present case certainly illustrates, the final settlement of estates will be substantially delayed with all of the uncertainties attendant thereupon. We feel certain that it will continue to be the rare case in which the attorney or accountant lets the deadline slip by with the following prospect of having to explain his dereliction to disappointed, and probably angry, clients. Obviously also, the expenses of litigation incurred, whoever has to pay them, will discourage carelessness about compliance with filing deadlines. Further, even if the taxpayer avoids paying a penalty, he will not have paid the tax until the return is filed, and interest will always be owing from the due date.

There are still other factors militating against an increased frequency of tardy returns resulting from the result we reach. The attorney who realizes that there are factors which will prevent a timely filing is not confronting an impenetrable wall in the nine month deadline. There are procedures for extensions of time for filing. Nor do we condone in this opinion a complete abdication of the responsibility of the taxpayer to keep in touch with his counsel. Not only must the taxpayer seek out a competent tax expert but he must supply the counsel with all necessary and relevant information and request him to prepare proper tax returns. Finally, we have no reason to believe that the Service will, because of this opinion, relax its close scrutiny of claims of reasonable cause even though we are holding that the Service should not automatically deny the relief because the primary basis of the claim is reliance upon counsel. Such a position would not be consistent with the Congressional mandate that the penalty should not be asserted if there has been reasonable cause shown.

In sum, as we stated at the outset, whether circumstances of reasonable cause exist in a given case is a question in the first instance for the trial court. In this case, that court found such circumstances and after fully reviewing the record and the parties' arguments as contained in their briefs and as given at oral argument, we cannot say that the trial court's findings were clearly erroneous, nor that the district court erred as a matter of law. "It is not the purpose of the law to penalize . . . innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection [as in this case] with interest for the delay." *Spies v. United States*, 317 U.S. 492, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). Because the trial court in this case has determined that "reasonable care" has been taken by the taxpayer to timely file the estate tax return, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

I respectfully dissent. The very length of the majority opinion is an indication of the difficult and tortuous route the majority experienced in arriving at, what I consider to be, an incorrect result. Here a taxpayer, presumably of normal intelligence and

aware of her civic responsibilities, employed a reputable, experienced attorney to aid her in her duties as executor of her father's estate. The attorney, with knowledge of the due date for a timely filing of the federal estate tax return, neglected to file it when due. After its preparation, it was filed three months and one day late. These are the simple facts and they call for a simple answer.

Unless we are to ignore the rudimentary rules of agency, the penalty was correctly assessed. If the taxpayer had not hired and then relied upon an attorney to aid her in the discharge of her fiduciary duties, there can be no doubt that unless a reasonable excuse was offered, she would have suffered the penalty assessed. The sole excuse she offered is that she hired and then relied on her attorney. That reliance proved to be faulty. Therefore, it cannot be characterized as a reasonable excuse. This case is as simple as that.

Judge Pell's concern about the opening of a Pandora's box is justified. The lid has indeed been pried open. Taxpayers and their attorneys will hereafter realize that they shall likely suffer no adverse consequences by late filings of estate tax returns. Today's decision has blunted the salutary objective of the penalty statute. Moreover, the court has indirectly but effectively immunized a negligent attorney from what appears to be an open and shut malpractice suit. Public policy considerations should militate against such immunization.

I would reverse the district court's judgment.