**ARMSTRONG'S, INC., Appellee,**

v.

**IOWA DEPARTMENT OF REVENUE, Appellant.**

**No. 66469.**

Supreme Court of Iowa.

June 16, 1982.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Mark R. Schuling, Asst. Atty. Gen., for appellant.

Robert O. Daniel and Gary J. Streit of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

SCHULTZ, Justice.

This appeal involves the interpretation of section 422.25(2), The Code, which imposes a

penalty on a taxpayer who fails to file a timely income tax return unless such failure is due to "reasonable cause." The principal issue is whether a taxpayer's reliance on a certified public accounting firm's assurances that it would either file the taxpayer's income tax return before the due date or file a request for an extension of time to file constitutes reasonable cause. On judicial review, the district court reversed an agency decision and held that such reliance constitutes "reasonable cause" within the meaning of the statute. We agree and therefore affirm the district court.

The basic facts are largely undisputed, although the parties draw different inferences from them. Armstrong's, Inc., a retail sales department store located in Cedar Rapids, failed to file its Iowa corporate income tax return for the fiscal year ending January 31, 1977, by the date it was due, May 31, 1977. Armstrong's was aware of the due date, however. As the deadline for filing the return neared, an officer called the store's tax preparer, McGladrey, Hansen, Dunn & Co., a certified public accounting firm, concerning the return and was assured that a request for an extension of time for filing had been prepared and that the request or the return itself would be filed by May 31. The officer testified that he had no particular training or expertise regarding requirements to obtain extensions of time for filing Iowa tax returns and relied completely on the accounting firm.

For many years, including 1977, Armstrong's had engaged the McGladrey firm for general accounting purposes and to prepare its federal and Iowa income tax returns. Until 1977 the returns were filed without incident. In 1977, however, McGladrey was unable to complete either the state or federal returns by their due dates because the firm was awaiting an Internal Revenue Service determination of the tax consequences of a pension plan.

McGladrey prepared a request for an extension of time to file the federal return, which was not required to be signed and was not signed by Armstrong's, and filed it together with a check from Armstrong's for the estimated amount of tax due. At the same time, McGladrey prepared a request for an extension of time for the state return. This extension request was to be retained by the firm and mailed near the due date of the return. No check was obtained to accompany the request. Due to a breakdown in McGladrey's interoffice control system, the extension request was not mailed; it remained in McGladrey's office until July 1977, when McGladrey prepared Armstrong's federal and Iowa returns and discovered the extension request in a file.

Armstrong's Iowa return was promptly filed, together with the payment of tax due plus interest. The Iowa Department of Revenue assessed Armstrong's with a penalty of $9,403.50 plus interest under section 422.25(2), The Code, which provides in pertinent part:

> In case of failure to file a return with the department on or before the due date (determined with regard to any extension of time for filing), *unless it is shown that the failure was due to reasonable cause and not due to willful neglect*, there shall be added to the amount required to be shown as tax ... not exceeding twenty-five percent in the aggregate.

(Emphasis added). Armstrong's protested the penalty, which resulted in a contested case hearing before the Department.

The hearing officer upheld the imposition of the penalty, concluding that there was no reasonable cause for Armstrong's failure to file its return on or before the due date. The hearing officer interpreted section 422.-25(2) by analogy to a similar federal internal revenue provision, which contains an identical penalty clause, and relied on numerous federal cases construing the provision. In reversing the Department's decision, the district court relied on other federal cases reaching different results and concluded that Armstrong's had established reasonable cause for its failure to file the return on time.

 I. Although we give deference to the Department's interpretation of a tax

statute, "the meaning of a statute is always a matter of law, and final construction and interpretation of Iowa statutory law is for this court." *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978). Correlatively, while we are bound by an agency's finding of adjudicative or basic facts (*i.e.*, the facts to which the law is applied) unless they are not supported by substantial evidence, § 17A.19(8)(f), The Code, whether or not those basic facts constitute "reasonable cause" within the meaning of section 422.25(2) is a finding of ultimate fact, which is a matter of law. *See* 2 K. Davis, *Administrative Law Treatise* §§ 15.03, 16.06 (1958). *See also Haywood Lumber & Mining Co. v. Commissioner*, 178 F.2d 769, 772 (2d Cir. 1950); *Daley v. United States*, 480 F.Supp. 808, 811 (D.N.D. 1979); *American Home Products Corp. v. Iowa State Board of Tax Review*, 302 N.W.2d 140, 142 (Iowa 1981); *Sorg*, 269 N.W.2d at 131.

■ Some of the general principles of statutory construction applicable to tax statutes are:

(1) In considering legislative enactments we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.

(3) Where language is clear and plain, there is no room for construction.

(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.

(6) We give weight to the administrative interpretation of statutes, particularly when they are longstanding.

(7) In construing tax statutes doubt should be resolved in favor of the taxpayer.

*Iowa National Industrial Loan Co. v. Iowa State Department of Revenue*, 224 N.W.2d 437, 440 (Iowa 1974) (citations omitted). In ascertaining legislative intent—the ultimate purpose of statutory construction—none of these rules is to be used to the exclusion of the others. *American Home Products Corp.*, 302 N.W.2d at 143.

■ An additional rule of construction is applicable in this case. Section 422.25(2) is similar to the late-filing-penalty provision of the Federal Internal Revenue Code, I.R.C. § 6651(a)(1) (1976), which contains language identical to that at issue here. Both parties have cited federal case authority interpreting this provision that is favorable to their position.

We have stated that when the legislature adopts a federal statute that had been previously interpreted by the federal courts, a presumption arises that the legislature knew the legislative history and the interpretation placed on the provision by the federal courts and had the same objectives in mind in adopting the provision. "As a result, federal court decisions construing the federal statute are illuminating and instructive on the meaning of our statute. . . ." *City of Davenport v. Public Employment Relations Board*, 264 N.W.2d 307, 313 (Iowa 1978). Such a presumption obviously cannot be applied when the federal courts' interpretations of a statutory provision are in a state of discord, however. Moreover, while judicial interpretation of identical or equivalent statutory language in another jurisdiction is entitled to great weight, we will not follow an interpretation that is unreasonable or not in harmony with the ends of justice and sound public policy. *See Quaker Oats Co. v. Cedar Rapids Human Rights Commission*, 268 N.W.2d 862, 866 (Iowa 1978); *Young v. City of Des Moines*, 262 N.W.2d 612, 619 (Iowa 1978); *Cassady v. Wheeler*, 224 N.W.2d 649, 652 (Iowa 1974).

II. The Department claims that a taxpayer's reliance on an accountant to file an income tax return or seek an extension of

time within which to file does not constitute "reasonable cause" under section 422.25(2). It urges us to adopt a *per se* rule that a taxpayer has a nondelegable duty to file a tax return when due. The Department relies heavily on *United States v. Kroll*, 547 F.2d 393 (7th Cir. 1977), to support its position. In *Kroll* an executor was penalized for untimely filing a federal estate tax return, even though he had hired a lawyer to prepare and file the return. The United States Court of Appeals for the Seventh Circuit stated: "[W]hen there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due." *Id.* at 396.

Other federal cases have followed this inflexible approach: *Millette & Associates, Inc. v. Commissioner*, 594 F.2d 121, 124–25 (5th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 207, 62 L.Ed.2d 135 (1979) (reliance on tax advisor is not reasonable cause for failure to file return on time; responsibility for filing is taxpayer's); *Logan Lumber Co. v. Commissioner*, 365 F.2d 846, 853–54 (5th Cir. 1966) (negligent failure of accountant or lawyer to prepare taxpayer's return is not reasonable cause for failure to timely file; responsibility for filing is on taxpayer); *Fleming v. United States*, 483 F.Supp. 284, 287 (E.D.Wis.1980), *aff'd*, 648 F.2d 1122 (7th Cir. 1981) (executor has nondelegable duty to file estate tax return and cannot rely on attorney's representation that he would request extension); *Daley v. United States*, 480 F.Supp. 808, 812 (D.N.D.1979) (fiduciary of estate has duty to ascertain obligations with regard to filing estate tax returns and to oversee activities of her attorney).

Other federal courts have either distinguished or criticized *Kroll*. In *Gray v. United States*, 453 F.Supp. 1356, 1360–61 (W.D.Mo.1978), the district court criticized *Kroll* as containing statements that are overly broad:

> If the duty to file a return is personal and nondelegable, it is only when the taxpayer has actual knowledge of the date the return in question is due. The cases relied on by the *Kroll* court do not support

its assertion on this issue. If there is any rule to be gleaned from a comparison of these cases, it is that "reasonable cause" must be determined from all the facts in each particular case.

> The crucial fact in *Kroll* ... was that the taxpayer had actual knowledge of the due date of the tax return. With that knowledge, it was not reasonable to completely rely on a third party to file the return on time. In that situation, the failure to timely file amounted to willful neglect within the meaning of the statute. However, when the taxpayer is uninformed as to the due date of the tax return, the rationale of these cases cannot apply because the absence of knowledge undermines the premise upon which the rationale is based.

The court held that the taxpayer's reliance on her attorney to timely file an estate tax return was ordinary business care and prudence constituting reasonable cause. *Id.* at 1361.

In *Rohrabaugh v. United States*, 611 F.2d 211, 216 (7th Cir. 1979), the Seventh Circuit refused to construe *Kroll* "as implicitly establishing a *per se* rule that reliance upon counsel for the timely filing of federal estate tax returns can never constitute 'reasonable cause.'" The court of appeals distinguished personal income tax cases, involving a generally known filing date, from the situation at issue, a federal estate tax case in which the fiduciary did not know the due date. The court declined to impose a penalty on the administratrix of an estate who relied on an attorney who did not file the return on time. *Id.* at 218–19.

Other federal courts have found reasonable cause to exist when the taxpayer relied on a tax professional to file the return: *Sanderling, Inc. v. Commissioner*, 571 F.2d 174, 178–79 (3d Cir. 1978) (corporate taxpayer not penalized for untimely filing of return when due date was uncertain, due to dissolution of corporation, and corporation relied on its attorney to ascertain correct due date); *In re Fisk's Estate*, 203 F.2d 358, 360 (6th Cir. 1953) (taxpayer not penalized when he turned over income tax informa-

tion to attorney who filed return one day late); *Clum v. United States,* 424 F.Supp. 2, 4 (S.D.Ohio 1976) (reasonable cause existed when executor relied on attorney who miscalculated tax period); *Giesen v. United States,* 369 F.Supp. 33, 35–36 (W.D.Wis. 1973) (reliance on advice of counsel constitutes reasonable cause if taxpayer: (1) is unfamiliar with tax law; (2) has made full disclosure of all relevant facts to attorney; and (3) has exercised ordinary business care and prudence).

■ We have found no conclusive federal authority to support the Department's contention that a taxpayer's duty to file a tax return is nondelegable as a matter of law. The lack of uniformity among the federal cases, despite attempts by the courts to categorize cases on the basis of subtle distinctions, indicates that the existence of reasonable cause should be determined on the basis of the facts of the particular case, rather than on the basis of a *per se* rule. This is the conclusion reached in *Rohrabaugh* : "Ultimately from our review of the authorities, . . . we come to the conclusion that the murkiness of the guidelines leaves the decision of the propriety of the penalty substantially on a case-by-case basis." 611 F.2d at 215. *See also Gray,* 453 F.Supp. at 1360 (reasonable cause must be determined from facts of each particular case).

We turn next to the rules of statutory construction discussed earlier. The Department contends that these principles support the adoption of the *per se* rule it advocates.

In interpreting similar revenue statutes, the appellate courts of two sister states have recently construed the term "reasonable cause" liberally in favor of the taxpayer. In *Genex/London, Inc. v. Kentucky Board of Tax Appeals,* 622 S.W.2d 499 (Ky. 1981), the Kentucky Supreme Court refused to uphold the imposition of a penalty for failure to file a consumer use tax return when the taxpayers had relied on the advice of an attorney. The court approved the conclusion of the court of appeals " 'that a good faith reliance on the advice of impartial competent tax counsel to whom all relevant facts have been revealed constitutes

reasonable cause for failure to file a use tax return.' " *Id.* at 501. In *Du Mont Ventilation Co. v. Department of Revenue,* 99 Ill. App.3d 263, 54 Ill.Dec. 741, 425 N.E.2d 606 (1981), the Illinois legislature amended withholding tax legislation to require quarter-monthly payments under some circumstances, instead of the monthly payments previously required. The taxpayer was unaware of the amendment, as was its in-house accountant, and its independent CPA did not advise it of the altered payment schedule. The Illinois Appellate Court noted that neglect of the law is normally not an excuse. However, the court concluded that because of the longstanding payment schedule and the taxpayer's unawareness of the change, the failure to make payments as required by the amendment constituted reasonable cause and could not be equated with willful negligence. *Id.* at 266, 54 Ill. Dec. at 742, 425 N.E.2d at 607. Although these cases may be factually distinguished from the present case, each applied the penalty clause liberally in favor of the taxpayer and found good faith action to constitute reasonable cause.

The Department, however, argues that construing section 422.25(2) to impose a *per se* rule of nondelegability would clearly effectuate the legislature's purpose in enacting the statute and prevent a strained, impractical, and absurd result. In analyzing the purpose underlying the penalty clause of the federal provision, the *Fleming* court stated:

> While requiring the layman administrator to look over his attorney's shoulder may seem a heavy burden, it must be weighed against threats of great monetary losses to the treasury and interference with efficient tax collection. This Court cannot easily allow neglect, mistake or inattentiveness to cost the government time and extra expense in collecting taxes.

483 F.Supp. at 287 (citation omitted). Another court added: "If every taxpayer . . . escaped the penalty for failure to file, our tax system would soon collapse." *Logan,* 365 F.2d at 854. We believe this reasoning overdramatizes the conceivable although

extremely improbable calamitous effect of a liberal construction of the penalty clause. Moreover, it ignores the plain language of the statute.

■ The better reasoned position, in our opinion, was stated by the Sixth Circuit in *In re Fisk's Estate* in expounding on the rule that when a taxpayer selects a competent tax professional to prepare a tax return and supplies all necessary information, the taxpayer has done all that ordinary business care and prudence can demand:

This rule, we hold, applies to the filing of tax returns as well as to reliance upon technical advice in complicated legal matters. We think this conclusion is in accord with the principle declared by the Supreme Court that the penalties under the revenue laws were designed to be imposed upon conduct "which is intentional, or knowing, or voluntary, as distinguished from accidental." *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381. *"It is not the purpose of the law to penalize ... innocent errors made despite the exercise of reasonable care."* *Spies v. United States*, 317 U.S. 492, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418.

203 F.2d at 360. (emphasis added).

■ The plain language of section 422.-25(2) expressly provides that a penalty shall not be imposed when there is "reasonable cause," as distinguished from willful neglect, for failing to file a return. The federal courts almost uniformly define "reasonable cause" as "ordinary business care and prudence." *See, e.g., Daley*, 480 F.Supp. at 811; *Richter v. United States*, 440 F.Supp. 921, 923 (D.Minn.1977); *Pfeiffer v. United States*, 315 F.Supp. 392, 395 (E.D.Cal.1970). We believe this meaning militates against a *per se* rule of nondelegability. What constitutes ordinary business care and prudence ordinarily must be determined by the peculiar facts of a particular case.

The principles of statutory construction that govern our interpretation of section 422.25(2) convincingly favor determining the existence of "reasonable cause" on a case-by-case basis. While a taxpayer having notice that tax matters are not being handled properly by a presumably competent professional tax specialist can be expected to take action in the exercise of ordinary business care and prudence, *see Gray*, 453 F.Supp. at 1361 (taxpayer's reliance on attorney after acquiring knowledge of due date of return does not constitute reasonable cause), "a taxpayer is under no duty to check up on his attorney to make sure that he is properly performing the job for which he has been hired when the taxpayer has no knowledge or notice that anything is wrong." *Id.* Accordingly, we refuse to adopt the *per se* rule advocated by the Department. We must still determine whether reasonable cause existed in this case.

■ III. The Department contends that Armstrong's failed to sustain its burden of establishing reasonable cause. It argues that Armstrong's was aware of the due date of the return; therefore, if it did not receive the return to file, it should have been aware that something was amiss. We disagree.

The undisputed evidence reveals that Armstrong's lacked expertise concerning the procedure for obtaining an extension of the time to file a return. It had been assured by McGladrey that an extension request had been prepared and would be filed. As we noted earlier, when a taxpayer employs a tax specialist to perform work, absent notice that something is amiss, the taxpayer is under no affirmative duty to make further inquiry. *Gray*, 453 F.Supp. at 1361.

The fact that Armstrong's knew the due date of its return is immaterial in this case. It had been assured that an extension request had been prepared and would be filed. It did not have notice that something was amiss, and its reliance on McGladrey constituted ordinary business care and prudence.

We hold that the hearing officer erred as a matter of law in concluding that Armstrong's reliance on McGladrey did not constitute reasonable cause within the meaning

of section 422.25(2). Accordingly, we affirm the district court's reversal of the Department's decision.

AFFIRMED.

All Justices concur except UHLENHOPP, HARRIS and LARSON, JJ., who concur specially, and McGIVERIN, J., who dissents.

UHLENHOPP, Justice (concurring specially).

I agree with the result but not with the basis on which the majority arrives at it.

I. The majority holds that delegation of the task of filing a return may constitute a defense to a penalty. The defense of delegability contains two flaws. First, it permits a tax return preparer to commit malpractice without suffering the consequences. The tardy taxpayer shows he placed the task of filing the return in the hands of a reputable tax return preparer and thereby obtains a defense to delinquent filing. I think that if the preparer culpably causes a delinquency, he should be liable to the taxpayer for the amount of the penalty, and the taxpayer should be liable to the department for the penalty. *See Cameron v. Montgomery*, 225 N.W.2d 154 (Iowa 1975). The delegability doctrine enables the preparer to escape the consequences of his own culpable act. I know of no other situation where delegation permits such a result.

Second, I agree with the department that the delegability doctrine will drive a hole in the tax collection process. The department deals with many thousands of returns filed by numerous preparers. The statutes fix the date for filing returns. If taxpayers can avoid penalties for late filing by the simple expedient of showing they placed the task in the hands of preparers, the filing and collection system will be impaired. The standard defense of delinquent taxpayers will be that they turned the filing over to someone else—and that someone else will be secure against a penalty for negligent delay in the knowledge that the taxpayer has a defense by virtue of the delegation itself.

II. I would treat the delay by an outside preparer the same as delay by an in-house tax preparer, under the basic rule that a principal must respond for the act of his agent. 3 Am.Jur.2d *Agency* § 261 (1962); 3 C.J.S. *Agency* § 390 (1973). No penalty is due "if it is shown that the failure [to file on time] was due to reasonable cause and not due to willful neglect...." The last words, "willful neglect," bear upon the meaning of the preceding words, "reasonable cause." Since we are dealing with an additional penalty, and not merely with the tax and interest, I agree with the majority that we should construe the quoted words liberally in favor of the taxpayer.

Both this taxpayer and its preparer had every intention of complying with the law on filing, by obtaining an extension of time. The ground for asking permission to delay filing was a good one: the tax problem over pensions. On the record, the good faith of the taxpayer and preparer is beyond question. A simple office mistake occurred; a high volume operation cannot function with complete perfection despite internal controls. The General Assembly has created a penalty exception for reasonable cause where willful neglect is not involved. I would hold on this record, treating the outside tax preparer with the same consequences as an in-house preparer, that reasonable cause for the delay appears and willful neglect does not appear.

I therefore concur in the result.

HARRIS and LARSON, JJ., concur in this special concurrence.

McGIVERIN, Justice (dissenting).

I respectfully dissent from the opinion and result reached by the majority.

I agree with the reasoning in division I of Justice Uhlenhopp's special concurrence. I also would treat the outside tax preparer with the same consequences as an in-house preparer.

However, I would hold on this record that reasonable cause for the delay does not appear and that willful neglect does. I

believe Armstrong's itself had a duty to be certain its tax return, or an application for extension, was filed on time. If its own reminder system failed or one was not used, it should be responsible for the consequences.

I would reverse the district court and affirm the Department of Revenue decision.