GENEX/LONDON, INC., and
Genex/Greer, Inc., Movants,

v.

KENTUCKY BOARD OF TAX APPEALS
and Department of Revenue, Common-
wealth of Kentucky, Respondents.

and

DEPARTMENT OF REVENUE,
COMMONWEALTH OF
KENTUCKY, Movant,

v.

GENEX/LONDON, INC., and Ge-
nex/Greer, Inc., Respondents.

Supreme Court of Kentucky.

July 7, 1981.

Rehearings Denied Nov. 17, 1981.

Robert L. Ackerson, Kristine Kaiser, Ack-
erson, Potter & Blanford, Louisville, Bruce
F. Clark, Stites, McElwain & Fowler,
Frankfort, for Genex/London, Inc. and Ge-
nex/Greer, Inc.

Susan G. Leavenworth, Legal Staff,
Dept. of Revenue, Frankfort, for Dept. of
Revenue and Kentucky Bd. of Tax Appeals.

STERNBERG, Justice.

Genex/Greer, Inc., a Kentucky corpora-
tion, formerly known as Greer Brothers and
Young, Inc., was and is primarily engaged
in highway construction in Kentucky and
surrounding states. Hereafter, it will be
referred to as the "taxpayer corporation."

Genex/London, Inc., is a Kentucky corporation primarily engaged in leasing heavy equipment to the taxpayer corporation. It was formerly a partnership composed of Greer Brothers and Young. Hereafter, it will be referred to as the "taxpayer partnership."

These appeals involve the propriety of the imposition of use tax, sales tax, and penalties by the Department of Revenue of the Commonwealth of Kentucky against the "taxpayer corporation" and the "taxpayer partnership."

The Department of Revenue, by the terms of a final ruling dated July 22, 1974, made the following assessments:

1. It assessed sales and use tax deficiencies against the "taxpayer corporation" in the sum of $28,400.26 for the period December 1, 1963, through January 31, 1968, plus interest, and $75,371.66 for the period February 1, 1968, through September 30, 1972, plus interest.

2. It assessed sales and use tax deficiencies against the "taxpayer partnership" in the sums of $65,657.36 and $58,456.44 as a result of two audits covering the period January 1, 1962, through September 30, 1972, plus interest.

3. It assessed the penalties provided by KRS 139.980(2) against the "taxpayer corporation" for failing to file a tax return for the period February 1, 1968, through September 30, 1972, and further assessed penalties against the "taxpayer partnership" for failing to file a tax return covering the period of the two audits January 1, 1962, through September 30, 1972.

The Kentucky Board of Tax Appeals affirmed the action of the Department of Revenue in all respects. On appeal from the action of the Kentucky Board of Tax Appeals to the Laurel Circuit Court, the action of the Board was affirmed both as to the "taxpayer corporation" and the "taxpayer partnership," except as to the amount of the assessment of use tax on an H–18 Beechcraft airplane against the "taxpayer

corporation," which the circuit court ordered to be deleted from the deficiency claim against the "taxpayer corporation."

The "taxpayer corporation" and the "taxpayer partnership" appealed to the Court of Appeals of Kentucky where the action of the Laurel Circuit Court was affirmed, except that it reversed the trial court (1) insofar as it sustained the imposition of a use tax on the "taxpayer corporation" for consumable supplies purchased from an out-of-state vendor, and (2) insofar as it sustained the imposition of the penalties provided by KRS 139.980(2) on both the "taxpayer corporation" and the "taxpayer partnership" for failing to file tax returns. Motions for limited review were granted by this court. 609 S.W.2d 366. We will consider both reviews together and dispose of all of the issues in one opinion.

I

IS A PENALTY PROPERLY IMPOSED UNDER KRS 139.980(2) FOR FAILURE TO PROMPTLY FILE SALES OR USE TAX RETURNS WHEN THE TAXPAYER HAS DEMONSTRATED REASONABLE CAUSE IN RELYING IN GOOD FAITH UPON THE IMPARTIAL ADVICE OF ATTORNEYS AND CERTIFIED PUBLIC ACCOUNTANTS?

■ KRS 139.980(2), in effect during the period involved in this litigation, provided:

"If any taxpayer fails to make and file a return required by this chapter on or before the due date of the return or the due date as extended by the department, then, unless it is shown to the satisfaction of the department that the failure is due to reasonable cause, five per cent (5%) of the tax found to be due by the department shall be added to the tax for each thirty (30) days or fraction thereof elapsing between the due date of the return and the date on which filed, but the total penalty shall not exceed twenty-five per cent (25%) of the tax."

The application of the penalties set out in this statute are limited to instances where

the taxpayer has not shown reasonable cause for having failed to file the type of tax returns challenged by the "taxpayer corporation" and the "taxpayer partnership." The keystone to the proper construction of this statute is the phrase "reasonable cause." Regrettably, this court has not heretofore defined it, nor is it defined by statute. Counsel for the taxpayers argue that reliance upon the advice of an attorney or a certified public accountant constitutes reasonable cause for non-filing even though the taxpayers are ultimately determined to be subject to the tax. On the other hand, the Department of Revenue seems to use *Giesen v. United States*, 369 F.Supp. 33 (W.D.Wis.1973), as its authority for the imposition of the penalties. *Giesen* lays down a three-pronged attack to determine reasonable cause, as follows: (1) the taxpayer must be unfamiliar with tax law; (2) the taxpayer must have made full disclosure of all relevant facts to the attorney or accountant he has hired; and (3) the taxpayer has exercised ordinary business care and prudence.

The Kentucky Board of Tax Appeals found that "Both the Corporation and the Partnership relied upon advice from its auditors, certified public accountants (CPAs), and attorneys in not filing Consumer Use Tax Returns." The Board also determined that "Neither the Corporation nor the Partnership acted in good faith and neither had reasonable cause for their nearly total failure to file Consumer Use Tax Returns."

In *Meyers v. Arcadia Realty Foundation, Inc.*, Ky., 367 S.W.2d 836 (1963), this court said:

> "The crucial question is whether a court of equity can excuse a taxpayer from paying the penalties and interest imposed by KRS 91.430 upon a determination that the taxpayer believed in good faith that he was not liable for the taxes assessed against him."

In disposing of the issue, we wrote:

> "... Consequently, in this jurisdiction, a taxpayer is excused from payment of the penalties and interest imposed by KRS 91.430 when it is judicially deter-

mined that he has resisted payment of his taxes in good faith."

The Court of Appeals, in expressing its opinion in the instant case, aptly said:

> "... There is no showing that the attorneys or certified public accountants were so unskillful or ignorant of their professions that the fact of their employment could be taken as bad faith. In the absence of such a showing, we believe that the appellants, ignorant themselves of the law, were entitled to rely on the advice of attorneys and certified public accountants licensed by this Commonwealth to give the kind of advice which they did and that such reliance constituted reasonable cause for not filing the use tax returns."

The court, having thus written, moved on and disposed of the issue as follows, "... we are of the opinion that a good faith reliance on the advice of impartial competent tax counsel to whom all relevant facts have been revealed constitutes reasonable cause for failure to file a use tax return."

This court is of the opinion that the Court of Appeals well reasoned the issue and arrived at the proper result.

## II

IS THE DENIAL OF A CREDIT UNDER KRS 139.510 FOR SALES TAX PAID TO A SISTER STATE AGAINST USE TAX LEVIED ON EQUIPMENT FIRST PURCHASED AND USED OUTSIDE OF KENTUCKY UNCONSTITUTIONAL, WHEN SUCH STATUTE GRANTS A CREDIT FOR SALES TAX PAID TO A SISTER STATE AGAINST USE TAX LEVIED ON EQUIPMENT PURCHASED OUTSIDE OF KENTUCKY AND FIRST USED IN KENTUCKY?

### Construction Equipment

The "taxpayer partnership" and the "taxpayer corporation" purchased construction equipment both in the State of Kentucky and outside of the State of Kentucky. Some of the equipment purchased outside

of Kentucky was first used in Kentucky, whereas some of the equipment purchased outside of Kentucky was first used in other states before being used in Kentucky. The equipment was normally purchased at the most feasible and practical location, depending upon the contracting jobs obtained by the "taxpayer corporation."

The construction equipment involved herein was primarily owned by the "taxpayer partnership" and initially purchased outside of the State of Kentucky and acquired for initial use in the state wherein purchased. At the time of purchase, sales tax was paid to each sister state in connection with such purchase. As the "taxpayer corporation" completed its projects in these sister states, the "taxpayer partnership" transferred the equipment to Kentucky and other states to be used by the "taxpayer corporation" in completing its other projects.

The imposition, generally, of a use tax is found in KRS 139.310, which states as follows:

"Imposition of use tax.—An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased on and after April 1, 1968, for storage, use or other consumption in this state at the rate of five per cent (5%) of the sales price of the property."

The imposition of a use tax on equipment brought into this state for use on construction projects, in effect during the period involved in this litigation, was found in KRS 139.320 and is as follows:

"Use tax on machinery brought into state for construction project.—(1) The use tax of five per cent (5%) is hereby levied upon the storage, use or other consumption in this state of any machines, machinery, tools or other equipment brought, imported or caused to be brought into this state for use in constructing, building or repairing any building, highway, street, sidewalk, bridge, culvert, sewer or water system, drainage, or dredging system, electric or steam railway system, reservoir or dam, hydraulic or power plant, transmission line, tower, dock, wharf, excavation, grading or other improvement or structures, or any part thereof. The owner or, if the property is leased the lessee of any such machine, machinery, tools or other equipment shall be liable for the tax provided for in this chapter, to be computed as set out below. The useful life of such machines, tools or other equipment shall be determined by the department in accordance with the depreciable value permitted under KRS chapter 141 and regulations issued pursuant thereto. Said use tax shall be computed on the basis of such proportion of the original purchase price of such property as the duration of time of use in this state bears to the total useful life. Such tax shall become due immediately upon such property's being brought into this state, and in the absence of satisfactory evidence as to the period of use intended in this state, it shall be presumed that such property will remain in this state for the remainder of its useful life.

(2) The provisions of this section shall not be applicable with respect to sales of such property within this state or to the use, storage or consumption of such property when purchased for use in this state, and in such cases the full sales or use tax shall be paid as in all other cases, irrespective of the period of intended use in this state."

A use tax credit for sales tax paid in another state which has a reciprocal tax arrangement with Kentucky is treated in KRS 139.510, which states:

"Use tax credit for sales tax paid in another state under reciprocal arrangement.—The tax levied by KRS 139.310 shall not apply with respect to the storage, use or other consumption of tangible personal property in this state upon which a tax substantially identical to the tax levied under KRS 139.200 (not including any special excise taxes such as are imposed on alcoholic beverages, cigarettes and the like) equal to or greater than the amount of tax imposed by KRS 139.310 has been paid in another state. Proof of

payment of such tax shall be according to rules and regulations of the department. If the amount of tax paid in another state is not equal to or greater than the amount of tax imposed by KRS 139.310, then the taxpayer shall pay to the department an amount sufficient to make the tax paid in the other state and in this state equal to the amount imposed by KRS 139.310. No credit shall be given under this section for sales taxes paid in another state if that state does not grant credit for sales taxes paid in this state."

There is a marked and definite distinction between the tax imposed pursuant to the provisions of KRS 139.310 and that imposed by KRS 139.320. The constitutionality of these statutes has not been challenged. The constitutional challenge is directed at KRS 139.510, which provides for a credit for use tax paid in another state on an item purchased in another state and first used in Kentucky (KRS 139.310). An item, however, purchased in another state and first used in the other state and then brought into Kentucky (KRS 139.320) does not qualify for the tax credit. It is charged that the nonqualifying provision of KRS 139.510 violates the equality of taxation demand of section 171 of the Kentucky Constitution, as well as violating the equal protection clause (14th Amendment) and the commerce clause (Article 1, Sec. 8) of the United States Constitution.

We must continue to bear in mind that it is not the constitutionality of the tax statutes (KRS 139.310 and 139.320) that is challenged. The challenge is directed at the credit provision of KRS 139.510. To remedy this condition, taxpayers would have this court require the application of the credit provision of KRS 139.510 to items purchased in another state, first used in another state and then brought into Kentucky, as well as to items purchased in another state and first used in Kentucky.

■ It is true that the legislature has created a classification of taxpayers. This it may constitutionally do, so long as the classification is not arbitrary and unreasonable in having no substantial relation to the permissible governmental purpose of the legislature. *Department of Revenue v. Spalding Laundry & Dry Cleaning Co.*, Ky., 436 S.W.2d 522 (1969), Appeal dismissed, 396 U.S. 2, 90 S.Ct. 23, 24 L.Ed.2d 1.

■ The present issue fomented as the result of the purchase of equipment for use in highway construction. Irrespective of the contractor who is awarded a highway construction contract, he knows when preparing his bid that he is subject to the same tax and the same tax credits as all other bidders. Tight controls of the highway construction industry, whether it be by use tax, sales tax, or otherwise, tend to act as a leveling agent for everyone engaged in the highway construction industry, even the state. It is just the opposite from arbitrary. There is a legitimate purpose for a credit provided by KRS 139.510.

In *George v. Scent*, Ky., 346 S.W.2d 784 (1961), this court construed the use tax law, now KRS 139.310, and the credit provisions thereof, now KRS 139.510. In a lengthy opinion we discussed the propriety of not only the character of the tax but the propriety of the tax credit. We said:

"The instant case does not concern an exemption of a person or institution or municipality from taxation. . . . It concerns the question of whether the broad terms of Article I of the 1960 Act allow credit for taxes already paid a sister state on used motor vehicles brought into the state."

We further stated:

". . . Because of their mobility, the use tax is a justifiable device to protect the revenue and local dealers from outside purchases of automobiles; otherwise, their purchase out of the state would escape payment of the state's sales tax. Together the two provisions form a comprehensive tax system applicable to the sale of motor vehicles. It is an excise and not a property tax or fee for registration. . . .

Such statutes 'normally exempt goods upon which a sales tax has previously been paid.' 47 Am.Jur., *Sales and Use*

Tax, § 42. This results in equality. Annotations, 129 A.L.R. 223, 228; 1 A.L.R.2d 453."

In discussing the same constitutional issues that have been raised in the instant case, we said:

"It is to be remembered that equality of taxation is the demand of the Constitution. §§ 171, 172, 173. It is a touchstone by which a taxing statute is to be tested. The principal decision in *Henneford v. Silas Mason Co.*, 300 U.S. 577, 57 S.Ct. 524, 527, 81 L.Ed. 814, cited by the parties herein, was that the imposition of the sales and use tax by the State of Washington upon construction machinery and material brought into the state was not a burden upon interstate commerce, for it was levied after the property had come to rest. With reference to the payment of similar taxes on the same property in other states, Mr. Justice Cardozo observed:

'When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership then the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed. Equality exists when the chattel subjected to the use tax is bought in another state and then carried into Washington.' "

■ To paraphrase the principal decision in *Henneford v. Silas Mason Co.*, supra, we are of the opinion that neither the sales nor use tax of the Commonwealth of Kentucky upon construction machinery and materials brought into this state is a burden upon interstate commerce, for it is levied after the property comes to rest in Kentucky.

It is evident that in the minds of the legislators there existed a legitimate public purpose in allowing the tax credit, thereby equalizing the tax burden among each taxpayer coming within the purview of that particular classification.

We find KRS 139.510 to be constitutional.

III

DID THE DEPARTMENT OF REVENUE CORRECTLY LEVY A USE TAX ON THE CONSUMABLE SUPPLIES PURCHASED BY THE TAXPAYERS IN KENTUCKY FROM OUT–OF–STATE SELLERS?

■ The department argues that such sales are subject to a use tax, not a sales tax. The "taxpayer corporation" argues that such sales are subject to a sales tax, not a use tax. The facts pertinent to this operation are set out in paragraphs 16 and 17 of the findings of fact made by the Kentucky Board of Tax Appeals, as follows:

"16. Sales of consumable supplies to the Corporation took place in the following manner. Each supplier has trucks which go from job site to job site. Each truck contains an inventory of the more commonly used consumable supplies. If the driver-salesman, an employee or agent of the supplier, has the item in stock in his truck, he delivers the item at the job site. The job site superintendent signs a receipt for the item. The salesman takes this receipt back to his out-of-state headquarters which bills the Corporation's main office in London, Kentucky. If the driver-salesman does not have the item in stock, the job superintendent places an order with him. The driver-salesman takes the order to his out-of-Kentucky headquarters which fills the item, if it can, and ships the item to the Corporation. A bill is then sent to the Corporation's main office.

17. Some sales of consumable supplies to the Corporation were made in Kentucky. Some sales of consumable supplies, however, to the Corporation were consummated outside Kentucky. The evidence does not establish which consumable supplies were sold to the Corporation in Kentucky and which were sold to the Corporation outside Kentucky."

The Court of Appeals of Kentucky found that, "The statutes and departmental regulations imposed a sales tax on all of the sales of consumable supplies involved in this case; consequently no use tax could be imposed." We disagree.

Both sales and use taxes are covered by KRS Chapter 139. Pertinent to the determination of the issues are KRS 139.200, 139.310, 139.330, 139.340, and 139.500. We copy them herein for ready reference.

"139.200. Imposition of sales tax.—For the privilege of making 'retail sales' or 'sales at retail,' a tax is hereby imposed upon all retailers at the rate of five per cent (5%) of the gross receipts of any retailer derived from 'retail sales' or 'sales at retail' made within this commonwealth on and after April 1, 1968."

"139.310. Imposition of use tax.—An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased on and after April 1, 1968, for storage, use or other consumption in this state at the rate of five per cent (5%) of the sales price of the property."

"139.330. Purchaser's liability for use tax.—Every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the use tax levied under KRS 139.310. His liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer engaged in business in this state or from a retailer who is authorized by the department, under such rules and regulations as it may prescribe, to collect the tax and who is, for the purpose of this chapter relating to the use tax, regarded as a retailer engaged in business in this state, given to the purchaser pursuant to KRS 139.340 is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers."

"139.340. Retailer's duty to collect tax. —(1) Except as provided in KRS 139.470 and 139.480, every retailer engaged in business in this state and making sales of tangible personal property for storage, use or other consumption in this state, shall, at the time of making the sales, or, if the storage, use or other consumption of the tangible personal property is not then taxable hereunder, at the time the storage, use or other consumption becomes taxable, collect the tax levied under KRS 139.310 from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the department.

(2) 'Retailer engaged in business in this state' as used in this chapter includes any of the following:

(a) Any retailer maintaining, occupying, or using, permanently or temporarily, directly or indirectly, or through a subsidiary, or agent, by whatever name called, an office, place of distribution, sales or sample room or place, warehouse or storage place or other place of business;

(b) Any retailer having any representative, agent, salesman, canvasser or solicitor operating in this state under the authority of the retailer or its subsidiary for the purpose of selling, delivering, or the taking of orders for any tangible personal property."

"139.500. Exemption from use tax of property subject to sales or gasoline tax. —(1) The storage, use or other consumption in this state of property, the gross receipts from the sale of which are required to be included in the measure of the tax levied under KRS 139.200 is not subject to the use tax.

(2) The storage, use, or other consumption in this state of gasoline or special fuels on which the tax under KRS chapter 138 has been paid and which is not subject to refund under KRS 138.341, 138.344, 279.200, or 279.530 shall not be subject to the use tax."

The provisions of KRS Chapter 139 are designed to complement one another, not to establish a plan so as to circumvent the imposition or collection of an excise tax. KRS 139.200 imposes a license tax upon a retailer for the privilege of engaging in the business of selling at retail tangible personal property in Kentucky. KRS 139.310 imposes a use tax of five percent (5%) on the consumption in this state of tangible personal property purchased for consumption in this state. The consumables with which we are confronted were purchased in Kentucky for consumption in Kentucky. The

legislature has seen fit to carve from the general provisions of KRS 139.200 those items coming within the provisions of KRS 139.310 and termed consumable. KRS 139.-330 delineates the tax levied under KRS 139.310 as a use tax and places liability for the tax on the purchaser. However, if the purchaser secures a receipt from the retailer, he is relieved from liability for the tax to which the receipt refers. Bear in mind that KRS 139.330 is not a taxing statute, but is a statute whereby liability for the payment of a tax is provided by the legislature. KRS 139.340 places the responsibility on the retailer to collect the use tax imposed by KRS 139.310. KRS 139.500 provides for the exclusion of the use tax levied pursuant to the provisions of KRS 139.310 from the sales tax levied pursuant to the provisions of KRS 139.200. This statute (KRS 139.500) specifically refers to exclusion of use tax. The tax with which we are concerned was levied pursuant to KRS 139.-310, not KRS 139.200; thus we have no exclusion.

The significance of the issue is that if the tax is determined to be a use tax, the taxpayers are liable for the tax pursuant to KRS 139.330; while on the other hand, if the tax is found to be a sales tax, then the liability is on the seller and not the taxpayers.

The legislature enacted the sale and use tax laws as an integrated whole. We are of the opinion that when the purpose and design of the sales and use tax laws are measured by KRS Chapter 139, we have no alternative but to hold that the consumable supplies purchased by the taxpayers in this case were subject to the Kentucky use tax.

The decision of the Court of Appeals of Kentucky is affirmed in part and reversed in part. To the extent that it determined that the Department of Revenue improperly levied a use tax on the consumable supplies purchased by the taxpayers in Kentucky from out-of-state sellers, the Court of Appeals is reversed; in all other respects, it is affirmed. This cause is remanded to the Laurel Circuit Court for the entry of a judgment in keeping with this opinion and so much of the decision of the Court of Appeals not in conflict herewith.

All concur.