MARGO A. BUCKLEY (Donor), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent., ESTATE OF WILLIAM E. BUCKLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buckley v. Commissioner
Docket Nos. 9321-79, 9322-79.
United States Tax Court
T.C. Memo 1981-638; 1981 Tax Ct. Memo LEXIS 106; 42 T.C.M. (CCH) 1592; T.C.M. (RIA) 81638; October 29, 1981. G. Wells Anderson, for the petitioners. Maureen T. O'Brien, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined an estate tax deficiency of $ 35,122.36 in respect of the Estate of William E. Buckley and a gift tax deficiency as well as a section 6651(a)(1) addition to tax against Margo A. Buckley for the calendar quarter ending December 31, 1974, in the respective amounts of $ 34,537.50 and $ 8,634.38. As a result of concessions, the remaining issues are as follows: (1) whether transfers of real property by Margo A. Buckley (hereinafter sometimes referred to as petitioner) *109 to a trust created by her husband, William E. Buckley, were subject to gift tax; (2) if such transfers were subject to gift tax, whether Mrs. Buckley is liable for the addition to tax for failure to file gift tax returns; and (3) whether the property so transferred is includable in Mr. Buckley's gross estate. The facts have been stipulated. Margo A. Buckley and William E. Buckley were married from November 16, 1926, until Mr. Buckley's death on November 9, 1975. At the time of his death, they resided at Hopkinton, New Hampshire, and Mrs. Buckley was a resident of Hopkinton at the time her petition was filed. The executor of Mr. Buckley's estate is Richard Edmunds, Trust Officer of the Concord National Bank of Concord, New Hampshire. On July 17, 1970, Mr. Buckley established a trust, naming himself and Concord National Bank as trustees. Under the terms of the trust, income from trust property was to be paid at regular intervals to himself as grantor, [1] and principal was to be paid to him as well if he should so request. If at any time the bank determined that Mr. Buckley was incapacitated, it was authorized to use the income and principal for the support and welfare of both *110 spouses, or for any other purpose believed by it to be in their best interests. Mr. Buckley specifically reserved the right, without consent of the trustees, "to sell, assign or hypothecate any * * * property transferred to the trust", and "at any time or from time to time * * * to revoke [the trust] or to withdraw all or any part of the trust estate as it shall then exist". Upon Mr. Buckley's death, with his wife surviving, the trust indenture provided that she would receive payments of income and would have the right to request the trust principal. Any assets remaining in the trust at her death were to be distributed to the residuary legatees of Mr. Buckley's estate. The trustees were authorized to receive property from persons other than the grantor and to administer any such property according to the provisions of the trust. Although the original *111 contribution to the trust did not include real estate, the trust instrument gave the trustees broad powers to deal with any real estate in the trust, including sale of the property and application of the proceeds to provide a residence for Mr. Buckley's family. The trust indenture was amended on three occasions. The first amendments, dated November 6, 1972, enlarged the powers of the bank (hereinafter sometimes referred to simply as the "trustee") [2] to apply income and/or principal for the benefit of Mrs. Buckley in the event of her incapacity. The amendment did not undertake to affect the grantor's right to demand income or principal during his lifetime, but was apparently intended to be operative in the event of his possible incapacity as well as during Mrs. Buckley's life after his death. The second amendment, dated January 9, 1974, dealt primarily with disposition of the trust's assets upon Mr. Buckley's death. In the event that Mrs. Buckley should survive her husband, the trustee was directed to establish, *112 out of the assets of the trust, a new trust (a marital deduction trust) to be known as the Margo A. Buckley Trust, to be coordinated with other property passing to her at his death, so that such other property together with the property in the marital deduction trust would equal one-half of his adjusted gross estate. Income and principal (as specified) of the marital deduction trust were to be payable to her for her life, with a testamentary power of appointment over the remaining principal. The assets remaining after funding the marital deduction trust were to be held in a separate trust, designated the William E. Buckley Remainder Trust, to pay the income therefrom to Mrs. Buckley for life, with discretion in the trustee to apply any portion of the principal for her benefit in accordance with specified standards but only in the event that there was no undistributed balance in the marital deduction trust. Upon Mrs. Buckley's death, Following that of her husband, or upon his death if he survived her, the trustee was to pay over the proceeds of the "within trust" to the residuary legatees under his will. Although her testamentary power of appointment over the principal of the marital *113 deduction trust remained intact after his death, she was explicitly denied any such power with respect to the Remainder Trust. [3]
By a deed dated September 19, 1973, Mrs. Buckley transferred certain real estate located in Huntington, New York, to the Concord National Bank as trustee under the July 17, 1970, indenture of trust. The real estate, sometimes referred to as the "homestead" property, had been purchased by Mrs. Buckley in her name alone with her own funds. The deed states as consideration for the transfer "ten dollars and other valuable consideration", but does not explain the "other valuable consideration", nor does it give any indication of Mrs. Buckley's motivation for making the transfer. Similarly, by deed dated August 19, 1974, Mrs. Buckley transferred to the bank as trustee under the foregoing trust indenture certain real property in Hopkinton, New Hampshire, which she had previously acquired with her own funds. The deed states that the transfer was made "for consideration paid", but *114 does not otherwise identify the consideration. On October 26, 1973, Mayland H. Morse, Jr., Mr. Buckley's attorney, wrote to Mr. Buckley that he (Mr. Morse) was holding as "your escrow agent", certain deeds from Mrs. Buckley to the bank which were apparently intended to refer to the same deeds described above with respect to the Huntington and Hopkinton properties. [4] He expressed his understanding that he was to hold the deeds "unrecorded in our vault until further instructions from you". [5] In a later writing to Mr. Buckley dated August 30, 1974, Mr. Morse confirmed that in accordance with Mr. Buckley's instructions the foregoing deeds to the bank had been transmitted for recordation. By letter of November 18, 1974, Mr. Morse transmitted the recorded deeds to the bank. The properties thus transferred by Mrs. Buckley to the trust remained as part of the corpus of the trust at the time of Mr. Buckley's death. The values of the Huntington and Hopkinton properties both as of the dates of transfer to the trust and as of the date of Mr. Buckley's death were $ 140,000 and $ 235,000, respectively. *115 The Commissioner determined that Mrs. Buckley's transfers of the Huntington and Hopkinton properties to the trust were subject to gift tax and that a 25 percent addition to tax under section 6651(a)(1) was required in view of the failure to file any gift tax returns in respect of these transfers. The gift tax deficiency was determined for the calendar quarter ending December 31, 1974, and no issue is raised herein as to whether that was the proper calendar quarter for either of the transfers if it should be held that the transfers were subject to gift tax. Although the estate tax return included $ 526,823.63 in Mr. Buckley's gross estate in respect of securities, interest, and a bank account as assets of his July 17, 1970, trust, it did not include the value of the Hopkinton property transferred to the trust by Mrs. Buckley. The Commissioner determined that this property was also includable in the gross estate. However, although the return did purport to include the Huntington property in the gross estate, the estate now contends by an amendment to the petition that this property, like the Hopkinton property, should not be included. 1. Gift tax. We first consider whether *116 the transfers reflected in Mrs. Buckley's deeds constituted gifts for which a gift tax return was required to be filed. It has been stipulated that no such return was filed by Mrs. Buckley. On brief, petitioner does not contest the Commissioner's classification of the transfers as gifts; instead, she contends that the transfers created "equitable joint tenanc(ies)" which are not deemed to be transfers unless the donor so elects to treat them. Section 2515(a), I.R.C. 1954. [6] Since she did not file a gift tax return and thereby elect to treat the transfers as gifts, section 2515(c), petitioner argues that no gift tax was due at the time the transfers were made. Following this argument to its logical conclusion, no gift tax was due at any time because the joint tenancy was terminated by the death of petitioner's spouse. Sections 2515(b) and (d). *117 Respondent contends that the transfers were effective to divest Mrs. Buckley of "all the economic benefits of the property and her control over its disposition", and as such constituted gifts to her husband. Respondent further maintains that the transfers did not create joint tenancies in the properties, not only because Mr. Buckley had the right to take or otherwise dispose of all trust property as he wished during his lifetime, but also because any rights of Mrs. Buckley as a beneficiary of the trust did not attach to specific trust assets such as the transferred real estate. We agree. The gift tax applies to all transfers of property by gift, whether the transfer is in trust or is made directly to the donee. The focus is not on the extent to which the donee has benefited, but rather "the value of the property passing from the donor". Section 25.2511-2(a), Gift Tax Regs. When the donor has so parted with control of the property "as to leave in him no power to change its disposition, * * * the gift is complete". Section 25.2511-2(b), Gift Tax Regs. We find that Mrs. Buckley made *118 completed gifts of the properties to the trust. The deeds were validly executed and were subsequently delivered to the bank as trustee. Petitioner has not asserted or offered evidence to show that she received consideration for the transfers, despite boiler plate language to the contrary in the deeds, and thus the full value of all rights transferred must be included in valuing the gifts. Petitioner alludes to an argument that she retained some rights in the properties after the transfers, but the record does not support such a contention. It is apparent from an examination of the deeds that all of Mrs. Buckley's interest in the two properties was conveyed to the trust. The only way in which Mrs. Buckley might regain all or a portion of the properties was as a beneficiary of the trust, but any such potential benefit was subject to Mr. Buckley's right to revoke the trust or simply remove all property from the trust. We hold that the gifts were for the full value of each property transferred. We next turn to petitioner's contention that the transfers created joint tenancies with right of survivorship for the benefit of Mr. and Mrs. Buckley. In determining whether joint tenancies *119 were created upon the transfers, we are not limited to the term applied to the form of ownership under local law. Instead, the regulations and legislative history make clear that the characteristics of the property ownership should control. Section 25.2515-1(a), Gift Tax Regs.; S. Rept. No. 1622, 83d Cong., 2d Sess. 480 (1954); H. Rept. No. 1337, 83d Cong., 2d Sess. A323 (1954).
It is no bar to the creation of a joint tenancy that the transfers by Mrs. Buckley to the trust effected a separation of legal and equitable title to the properties. It is well established that beneficiaries of a trust may be joint tenants with right of survivorship. Edmonds v. Commissioner, 90 F. 2d 14, 16 (9th Cir.), cert. denied 302 U.S. 713 (1937); 2 Scott, Trusts sections 113, 143 (3d Ed. 1967); Bogert, Trusts and Trustees, section 181 (Rev. 2d Ed. 1979). It must be determined then whether, under the terms of the deeds of transfer or the indenture of trust, the beneficial interests of Mr. and Mrs. Buckley were as joint tenants with right of survivorship. The deeds executed *120 by Mrs. Buckley contain no language indicating an intent that the bank hold the properties for the Buckleys as joint tenants with right of survivorship or as tenants by the entirety. While we recognize that under New Hampshire law, which would apply to the transfer of the Hopkinton property, it is not necessary to use specific language to create a joint tenancy, [7]N.H. Rev. Stat. Ann. section 477:18; In re Allaire Estate, 103 N.H. 318, 171 A. 2d 191, 192 (1961); Therrien v. Therrien, 94 N.H. 66, 46 A. 2d 538, 539 (1946), the New Hampshire statute does require that the grantor clearly indicate an intention that the grantees take as joint tenants. Gagnon v. Pronovost, 96 N.H. 154, 71 A. 2d 747, 749 (1950). The Hopkinton deed offers not even a hint that Mrs. Buckley intended that the bank hold the property for the Buckleys as joint tenants. On the contrary, from the language of the document the conclusion is inescapable that the bank was to act as trustee under the terms of the trust indenture executed by Mr. Buckley on July 17, 1970. The deed does not contain the words "joint tenants" or "tenants by the entirety" or even make mention *121 of "survivorship". Instead, the transfer is an outright grant to the bank in its capacity as trustee under the indenture. New York law, which would govern Mrs. Buckley's conveyance of the Huntington property, see DeVaughn v. Hutchinson, 165 U.S. 566, 570 (1897); see also Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 445 (1963) (White, J., dissenting); 2 Beale, Conflict of Laws section 214.2 (1935), requires express language for the creation of a joint *122 tenancy; conversely, a conveyance of real property to a husband and wife is presumed to create a tenancy by the entirety. N.Y. Est., Powers & Trusts Law section 6-2.2(a) and (b) (McKinney). In this case, however, the deed did not grant the property to Mr. and Mrs. Buckley, but rather to the trustee. We find no support for the proposition that such a conveyance is equivalent to the one described in the statute: "A disposition of real property to a husband and wife". (Emphasis added.) N.Y. Est., Powers & Trusts Law section 6-2.2(b) (McKinney). Therefore, we find that upon completion of the transfers the disposition of both properties was governed solely by the provisions of the indenture of trust. Petitioner contends that under the terms of the trust the beneficial interests of Mr. and Mrs. Buckley were as joint tenants with right of survivorship. We cannot agree. "In the case of an ordinary joint tenancy with right of survivorship, the interests of the joint owners are equal, and their equal interests are severable by unilateral action by either tenant". Stephens, Maxfield and Lind, Federal Estate and Gift Taxation, para. 10.05[1] (4th Ed. 1978). It cannot be disputed *123 on the facts as stipulated that the beneficial interests of petitioner and her husband were unequal, or that only he had the right to amend or revoke the trust so as to alter the disposition of the property. He reserved the right to withdraw any and all trust assets at any time during his life; Mrs. Buckley had no such right. This fact alone is sufficient to deny the existence of a joint tenancy, since upon severance each joint tenant has a right to only an equal share of the property and not the whole. In addition, Mr. Buckley retained the power to sell all of the trust property, while a joint tenant may convey only his fractional share of the jointly-owned property. See 4A Powell, Real Property paragraph 618 (1979); 2 American Law of Property section 6.2 (1952).With his powers of withdrawal, amendment, and revocation, Mr. Buckley's control over the property was virtually absolute, and he certainly was able to obtain the trust assets without surviving his wife. Mrs. Buckley, however, had no more than an expectancy in the real estate once it became part of the trust. At any time prior to his death, Mr. Buckley could act to eliminate any beneficial interest of his wife in the *124 trust property. [8] Even if no such change were made, petitioner had no assurance that the real estate would be applied for her benefit when the marital deduction trust was funded. [9] If the bequest to petitioner under her husband's will were sufficient to fully utilize the marital deduction, then the marital deduction trust for petitioner's benefit would not be funded and all trust assets would be held in the Remainder Trust. In this situation, petitioner would have only a lifetime income interest in the trust assets, and any use of the principal for her benefit would be at the discretion of the trustee, subject, of course, to specified standards.If the marital deduction trust were funded, the selection of assets would be essentially at the discretion of the trustee, and it might or might not contain any of the real estate she had contributed and which would then become subject to her ultimate control. In sum, petitioner's rights in the real property were substantially limited under the terms of the trust and the amendments thereto, and what rights she had could be eliminated at any time at the whim of her husband.On these facts, we must find that petitioner's beneficial interest *125 in the real estate was not that of a joint tenant with right of survivorship. Therefore, the shelter of section 2515(a) was unavailable to petitioner and she was required to file a gift tax return with respect to the transfers of the Huntington and Hopkinton properties. Based on the above, we find for respondent on the issue of the gift tax deficiency. *126 2. Addition to tax for failure to file a gift tax return. The parties have stipulated that no return was filed, and respondent has therefore determined the maximum addition of 25 percent of the deficiency. Petitioner contends that she is not liable for the addition to tax because her failure was due to reasonable cause and not due to willful neglect. Section 6651(a)(1), I.R.C. 1954. [10] On brief, two arguments were offered by petitioner to support her position that the failure to file was due to reasonable cause: the belief that no gift tax return was due because of the election provided for in section 2515, and reliance on advice of an attorney that no gift tax return was due. Unfortunately for petitioner, we have no opportunity to consider the merits of her arguments here because no evidence has been adduced to substantiate those arguments. Petitioner has the burden of proof to show the existence of reasonable cause, Rule 142(a), Tax Court Rules of Practice and Procedure; see Neubecker v. Commissioner, 65 T.C. 577, 586 (1975); Fischer v. Commissioner, 50 T.C. 164, 177 (1968), *127 and that burden has not been carried. The stipulation of facts and exhibits attached thereto are devoid of any reference to petitioner's knowledge of the provisions of section 2515 or her belief that she had created joint tenancies with right of survivorship in the properties transferred. There is no basis in the facts for a finding that petitioner believed that a gift tax return was not due, and we therefore do not reach the issue of whether such a belief would satisfy the reasonable cause test of section 6651(a)(1) on these facts. *128 We also must find against petitioner on her contention that she relief on the advice of an attorney in deciding not to file a gift tax return. Petitioner directs our attention to the letters from Mr. Morse to Mr. Buckley previously referred to and the two deeds of transfer as evidence that she was so advised by counsel at the time the transfers were made and the gift tax return should have been filed. In order to establish reasonable cause, however, petitioner must show that she received and relied on advice of competent tax counsel. See, e.g., New York State Association of Real Estate Boards Group Insurance Fund v. Commissioner, 54 T.C. 1325, 1336 (1970); Stevens Bros. Foundation, Inc. v. Commissioner,39 T.C. 93, 130 (1962), modified on other grounds 324 F. 2d 633 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964), rehearing denied 377 U.S. 920 (1964); Mayflower Investment Company v. Commissioner, 24 T.C. 729, 733 (1955), affd. 239 F.2d 624 (5th Cir. 1956). Petitioner has failed to meet this burden of proof. Wholly apart from the absence of any evidence as to Mr. Morse's *129 competency as a tax advisor, the record does not show that his advice was sought or received as to gift tax return filing requirements. In view of the state of the record, we have no alternative but to sustain the determination of respondent in respect of the addition to tax. 3. Estate tax. The last issue for decision is whether the properties transferred by Mrs. Buckley to the trust are includable in her husband's gross estate. The estate contends that the properties should not be included because they were held in joint tenancy and all of the consideration for the original purchase was provided by Mrs. Buckley. See section 2040(a), I.R.C. 1954. We have found, however, that the beneficial interests of Mr. and Mrs. Buckley were not as joint tenants with right of survivorship; therefore, section 2040(a) is not applicable to the issue before us. We have only to decide whether the interest of Mr. Buckley in the properties at the time of his death is sufficient for inclusion of the properties in the estate.
Once the properties were transferred to the trust, Mr. Buckley had a power of appointment over them because of his powers of withdrawal, amendment, *130 and revocation provided for in the trust indenture. Section 20.2041-1(b)(1), Estate Tax Regs., provides: [I]f a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. Similarly, a power given to a decedent to affect the beneficial enjoyment of trust property or its income by altering, amending, or revoking the trust instrument or terminating the trust is a power of appointment. Furthermore, Mr. Buckley's power was a general power of appointment, since he could exercise it in favor of himself. Section 2041(b)(1), I.R.C. 1954, section 20.2041-1(c)(1), Estate Tax Regs. Under section 2041(a)(2), I.R.C. 1954, [11] any property over which the decedent held a general power of appointment at the time of his death must be included in his estate. Since there is no question that Mr. Buckley held this power until his death, the Huntington, New York, and Hopkinton, New Hampshire, properties are includable in his gross estate. *131 The result reached herein may perhaps seem harsh, and obviously petitioners could have had a more favorable outcome if there had been more careful estate planning. Notwithstanding that it was probably the general intention to provide for use of the trust for the benefit of both spouses during their joint lives as well as during the life of the survivor, together with rights in the survivor in respect of the remainder, the fact is that Mr. Buckley's reserved powers enabled him to defeat any "rights" that Mrs. Buckley might otherwise have had in respect of the properties that she transferred to the trust. We must deal with the situation presented by the record before us, and we cannot conscientiously reach any other result without distorting the facts. Because of concessions relating to other issues, Decisions will be entered under Rule 155. Footnotes
1. The property originally transferred to the trust consisted of cash and Government obligations (U.S. Treasury as well as municipal), in the aggregate face amount of $ 250,000. Although the trust instrument described him as "donor", he will sometimes be referred to herein as "grantor", in accordance with current practice.↩
2. The original trust indenture authorized the bank to act as sole trustee after Ms. Buckley's death. This provision was unaffected by any of the amendments.↩
3. A third amendment↩, dated November 18, 1974, provided for the payment of $ 25,000 to a certain "faithful" employee upon the death of the survivor of Mr. and Mrs. Buckley.
4. The record does not explain the apparent discrepancy between the October 26, 1973, date of Mr. Morse's letter, and the August 19, 1974, date of Mrs. Buckley's deed with respect to the Hopkinton property. Moreover, the situation is further confused by the stipulation of the parties which fixes September 23, 1974, as the date the property was transferred to the bank. And the confusion is augmented still further by the fact that a photocopy of the deed itself is in evidence, and it discloses that the number "4" was superimposed over a still visible "3" in "1974" appearing as the August 19, 1974, date of the deed. ↩
5. In addition to Mrs. Buckley's two deeds, the letter also refers to a deed by Mr. Buckley covering land adjacent to the Huntington property. No issue is presented herein with respect to this latter deed. The letter, however, is concerned with all three deeds, and states further: It is my understanding that at any time you are free to elect to convey any of these several properties or portions of them if you so desire at which time and upon which occurrence, you would so notify me so that I might destroy the escrow deed that related to any of the properties. In the absence of such transaction, it is my responsibility as your escrow agent in the event of your death prior to the death of Mrs. Buckley to cause these deeds to be placed on record, thereby vesting full title to the property in the trustee, Concord National Bank agreeably to the terms and provisions of the Indenture of Trust between William E. Buckley and Concord National Bank dated July 17, 1970. In addition to the foregoing, it is my understanding that should your disability or physical infirmity occur, that in the event of such contingency and upon advice of Dr. John H. Branson suggesting the period of disability might appear to be other than temporary, that in such event and upon such advice, I will cause the within deeds to be placed on record to vest the responsibility of management of the properties in Concord National Bank Trustee to relieve either you or Mrs. Buckley from the burden of this responsibility. This letter is intended to provide a record of our mutual understanding and I acknowledge that you may at any time modify, alter, amend or otherwise change the instructions to me and I will be prepared to abide at all times by your directions.↩
6. SEC. 2515. TENANCIES BY THE ENTIRETY. (a) Creation.--The creation of a tenancy by the entirety in real property, either by one spouse alone or by both spouses, and additions to the value thereof in the form of improvements, reductions in the indebtedness thereon, or otherwise, shall not be deemed transfers of property for purposes of this chapter, regardless of the proportion of the consideration furnished by each spouse, unless the donor elects to have such creation of a tenancy by the entirety treated as a transfer, as provided in subsection (c). (b) Termination.--In the case of the termination of a tenancy by the entirety, other than by reason of the death of a spouse, the creation of which, or additions to which, were not deemed to be transfers by reason of subsection (a), a spouse shall be deemed to have made a gift to the extent that the proportion of the total consideration furnished by such spouse multiplied by the proceeds of such termination (whether in form of cash, property, or interests in property) exceeds the value of such proceeds of termination received by such spouse. (c) Exercise of Election.--The election provided by subsection (a) shall be exercised by including such creation of a tenancy by the entirety or additions made to the value thereof as a transfer by gift, to the extent such transfer constitutes a gift, determined without regard to this section, in the gift tax return of the donor for the calendar quarter in which such tenancy by the entirety was created or additions made to the value thereof, filed within the time prescribed by law, irrespective of whether or not the gift exceeds the exclusion provided by section 2503(b). (d) Certain Joint Tenancies Included.--For purposes of this section, the term "tenancy by the entirety" includes a joint tenancy between husband and wife with right of survivorship.↩
7. Under the New Hampshire statute, any attempt to create a tenancy by the entirety instead results in the creation of a joint tenancy with right of survivorship. N.H. Rev. Stat. Ann. sec. 477:18. This distinction is not relevant for our purposes, however, because sec. 2515(d), I.R.C. 1954, makes clear that a joint tenancy with right of survivorship is meant to be included in the term "tenancy by the entirety" as that term is used in section 2515(a), I.R.C. 1954↩. Thus, no gift tax return is required if either interest is created in real property.
8. In the second amendment to the trust, Mr. Buckley undertook to amend Article Twentieth of the original trust indenture (in which he had reserved the power at any time "to vary or modify the terms of this trust or to revoke the same or to withdraw all or any part of the trust estate as it shall then exist"). The amendment reads as follows: The DONOR herewith limits his right and power to amend the within trust to disclaim any and all right to modify therein and amend the same by his last will and testament so as in any way to cause to be disqualified the within trust indenture from the maximum marital deduction benefits for which the within trust is designed and intended. The awkwardly phrased language of this amendment leaves its meaning obscure, although it was probably intended merely to preclude a testamentary↩ change that would adversely affect the maximum marital deduction. In any event, petitioners do not raise any issue based on this amendment, and we do not interpret it to deprive Mr. Buckley of the power during his lifetime to withdraw any specific assets from the Trust. Certainly, the record fails to show that as of the date of his death his possible withdrawal of the properties transferred to the trust by Mrs Buckley would in any way bring the foregoing amendment into play. 9. We note that on September 19, 1973, when petitioner executed the deed conveying the Huntington real estate, the trust had not yet been amended to substitute the limited marital deduction trust for the more generous original disposition, which allowed petitioner to withdraw all trust assets after↩ the death of her husband. Nevertheless, the letters from Mr. Morse to Mr. Buckley show that the Huntington deed was held in escrow until long after the trust was so amended. At the time the gift was completed, then, petitioner's survivorship rights were governed by the marital deduction trust provisions. (As noted above, petitioner does not contest the Government's position that if the transfers by Mrs. Buckley are held to be taxable gifts, they are to be treated as having been made during the calendar quarter ending December 31, 1974.)
10. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
11. SEC. 2041. POWERS OF APPOINTMENT. (a) In General.--The value of the gross estate shall include the value of all property-- (2) Powers Created After October 21, 1942.--To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038↩, inclusive. * * * For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.